UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| THOMAS BRANAGAN,<br><br>                    Petitioner,<br>     v.<br><br>ISIDRO BACA, *et al.*,<br><br>                    Respondents. | Case No. 2:15-cv-01575-GMN-PAL<br><br>AMENDED ORDER |

Introduction

This action is a *pro se* petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, by Thomas Branagan, a Nevada prisoner. The respondents have filed an answer, responding to the claims in Branagan's petition, and Branagan has filed a reply. The Court will deny Branagan's petition.

Background

Branagan was convicted on December 27, 2010, after a jury trial, in Nevada's Eighth Judicial District Court, in Clark County, of sexual assault with a minor under the age of fourteen, and he was sentenced to life in prison with the possibility of parole after 35 years. *See* Judgment of Conviction, Exhibit 3 (ECF No. 22-1). The conviction involved a sexual assault on Branagan's girlfriend's five-year-old granddaughter; the evidence indicated that, on an occasion when Branagan was babysitting the little girl, he put his penis in her mouth.

1

Branagan appealed. *See* Appellant's Opening Brief, Exhibit 4 (ECF No. 22-2). On November 18, 2011, the Nevada Supreme Court affirmed Branagan's conviction and sentence. *See* Order of Affirmance, Exhibit 18 (ECF No. 31-6).

On November 7, 2012, Branagan filed a *pro se* petition for writ of habeas corpus in the state district court. *See* Petition for Writ of Habeas Corpus, Exhibit 5 (ECF No. 22-3). On October 4, 2013, with counsel, Branagan filed a supplemental memorandum of points and authorities in support of the petition. *See* Supplemental Points and Authorities in Support of Post-Conviction Writ, Exhibit 6 (ECF No. 22-4). The state district court held an evidentiary hearing. *See* Transcript, Exhibit 19 (ECF No. 31-7). The state district court denied Branagan's petition on May 16, 2014. *See* Findings of Fact, Conclusions of Law and Order, Exhibit 8 (ECF No. 22-6). Branagan appealed. *See* Appellant's Opening Brief, Exhibit 9 (ECF No. 22-7). The Nevada Supreme Court affirmed on June 10, 2015. *See* Order of Affirmance, Exhibit 12 (ECF No. 22-10).

This Court received Branagan's federal petition for writ of habeas corpus, initiating this action, *pro se*, on August 17, 2015 (ECF No. 15). Branagan's petition asserts the following grounds for relief:

> 1. Branagan received ineffective assistance of trial counsel, in violation of his federal constitutional rights, because his trial counsel waived the State's 10-day notice under NRS § 51.385. *See* Petition for Writ of Habeas Corpus (ECF No. 15), p. 3.
>
> 2A. Branagan received ineffective assistance of trial counsel, in violation of his federal constitutional rights, because his trial counsel failed to investigate and pursue "a possible defense relating to his 'diminished capacity' as a result of his ADA recognized disabilities and or pharmacological regime (involuntary intoxication)." *See id.* at 5.
>
> 2B. Branagan's rights under the federal constitution were denied because "Nevada's failure to recognize this affirmative defense of 'diminished capacity' is a denial of the Appellant's [substantive] and procedural due process rights by denying [meaningful] access to the courts; to wit being able to present his disability in the judicial process en toto as provided under the [ADA]." *See id.*
>
> 3A. Branagan's rights under the federal constitution were denied because he was denied his right to present evidence concerning his disability. *See id.* at 7.

3B. Branagan received ineffective assistance of trial counsel, in violation of his federal constitutional rights, because his trial counsel failed "to determine that [he] was suffering from a disability." *See id.*

3C. Branagan received ineffective assistance of trial counsel, in violation of his federal constitutional rights, because his trial counsel failed "to recognize that the ADA allowed [him] to delve into the details regarding [his] mental illness and the side effects that the medications had on his state of mind, for the purpose of furthering an argument regarding involuntary intoxication." *See id.* at 8.

4. Branagan received ineffective assistance of trial counsel, in violation of his federal constitutional rights, "during [his trial counsel's] cross-examination of the State's witnesses." *See id.* at 10.

5. Branagan received ineffective assistance of trial counsel, in violation of his federal constitutional rights, because his trial counsel "failed to object to the testimony of victim's mother, whose testimony was based upon 3rd or 4th party hearsay and admitted to be perjured." *See id.* at 12.

Respondents filed an answer on July 5, 2016 (ECF No. 19), and Branagn filed a reply on March 6, 2017 (ECF No. 29).

On March 30, 2018, the Court ordered the record expanded, pursuant to Rule 7 of the Rules Governing Section 2254 Cases in the United States District Courts. *See* Order entered March 30, 2018 (ECF No. 30). The Court directed respondents to file, as exhibits, certain items from the state court record. *See id.* Respondents filed the supplemental exhibits on April 27, 2018 (ECF Nos. 31, 32 and 33). Branagan filed responses to the expansion of the record on May 18 and 23, 2018 (ECF Nos. 34, 35). And, on June 14, 2018, Branagan filed a motion for appointment of counsel (ECF No. 37).

Branagan's habeas petition is fully briefed and before the Court for resolution on the merits of his claims.

Discussion

28 U.S.C. § 2254(d)

A federal court may not grant a petition for a writ of habeas corpus on any claim that was adjudicated on the merits in state court unless the state court decision was contrary to, or involved an unreasonable application of, clearly established federal law as determined by United States Supreme Court precedent, or was based on an unreasonable determination of the facts in light of the evidence presented in the state-

court proceeding. 28 U.S.C. § 2254(d). A state-court ruling is "contrary to" clearly established federal law if it either applies a rule that contradicts governing Supreme Court law or reaches a result that differs from the result the Supreme Court reached on "materially indistinguishable" facts. *See Early v. Packer*, 537 U.S. 3, 8 (2002) (per curiam). A state-court ruling is "an unreasonable application" of clearly established federal law under section 2254(d) if it correctly identifies the governing legal rule but unreasonably applies the rule to the facts of the particular case. *See Williams v. Taylor*, 529 U.S. 362, 407-08 (2000). To obtain federal habeas relief for such an "unreasonable application," however, a petitioner must show that the state court's application of Supreme Court precedent was "objectively unreasonable." *Id.* at 409-10; *see also Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003). Or, in other words, habeas relief is warranted, under the "unreasonable application" clause of section 2254(d), only if the state court's ruling was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

<u>Ineffective Assistance of Counsel</u>

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court propounded a two prong test for analysis of claims of ineffective assistance of counsel: the petitioner must demonstrate (1) that the attorney's representation "fell below an objective standard of reasonableness," and (2) that the attorney's deficient performance prejudiced the defendant such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 688, 694. A court considering a claim of ineffective assistance of counsel must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. *Id.* at 689. The petitioner's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. And, to establish prejudice under *Strickland*, it is not enough for the habeas petitioner "to show that the

4

errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. Rather, the errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687.

Where a state court previously adjudicated the claim of ineffective assistance of counsel, under *Strickland*, establishing that the decision was unreasonable under AEDPA is especially difficult. *See Harrington*, 562 U.S. at 104-05. In *Harrington*, the Supreme Court instructed:

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both highly deferential, [*Strickland*, 466 U.S. at 689]; *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is "doubly" so, [*Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)]. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at 123, 129 S.Ct. at 1420. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Harrington*, 562 U.S. at 105; *see also Cheney v. Washington*, 614 F.3d 987, 994-95 (2010) (acknowledging double deference required with respect to state court adjudications of *Strickland* claims).

In analyzing a claim of ineffective assistance of counsel, under *Strickland*, a court may first consider either the question of deficient performance or the question of prejudice; if the petitioner fails to satisfy one element of the claim, the court need not consider the other. *See Strickland*, 466 U.S. at 697.

Ground 1

In Ground 1, Branagan claims that he received ineffective assistance of trial counsel, in violation of his federal constitutional rights, because his trial counsel waived the State's 10-day notice under NRS § 51.385. *See* Petition for Writ of Habeas Corpus (ECF No. 15), p. 3.

NRS § 51.385 provides:

1. In addition to any other provision for admissibility made by statute or rule of court, a statement made by a child under the age of 10 years describing any act of sexual conduct performed with or on the child or any act of physical abuse of the child is admissible in a criminal proceeding regarding that act of sexual conduct or physical abuse if:

>   (a) The court finds, in a hearing out of the presence of the jury, that the time, content and circumstances of the statement provide sufficient circumstantial guarantees of trustworthiness; and
>
>   (b) The child testifies at the proceeding or is unavailable or unable to testify.

2. In determining the trustworthiness of a statement, the court shall consider, without limitation, whether:

>   (a) The statement was spontaneous;
>
>   (b) The child was subjected to repetitive questioning;
>
>   (c) The child had a motive to fabricate;
>
>   (d) The child used terminology unexpected of a child of similar age; and
>
>   (e) The child was in a stable mental state.

3. If the child is unavailable or unable to testify, written notice must be given to the defendant at least 10 days before the trial of the prosecution's intention to offer the statement in evidence.

NRS § 51.385

Branagan asserted this claim in his state habeas action. The state district court ruled as follows on the claim:

> Defendant alleges that trial counsel was ineffective for waiving an additional 3 days of the 10-day notice requirement under NRS 51.385(3) after the court continued the trial 7 days to provide for adequate notice.
>
> A waiver was proper strategic decision by trial counsel because not waiving the 3 days would have been a futile act on trial counsel's part. A review of the transcript from October 4, 2010, reveals that the court wished to continue the matter briefly to avoid a possible procedural issue with the notice and at the same time balance the Defendant's rights. R.T., October 4, 2010, pgs. 2-10. The week following the hearing was selected for scheduling purposes because the trial was anticipated to last approximately 3 days and the court had 4 days open. *Id.* The transcript indicates that, while oral notice was put on the record, the prosecutor also sent written notice to trial counsel and which the court agreed would relate back to the October 1, 2010 date. *Id.* Therefore, Defendant's claim is belied by the record. The

6

record shows the court would have continued the trial anyway to accommodate proper notice because it did so even when the State argued that Defendant had all of the discovery and none of the statements would be a surprise to defense. *Id.* The Court properly granted the continuance and would have done so for a full 10 days if trial counsel had not waived the 3 days to accommodate the court's schedule.

Therefore, trial counsel cannot be ineffective for failing to take the futile action of refusing to waive 3 days of the notice. Trial counsel did not provide ineffective assistance of counsel.

For the same reasons, Defendant cannot show prejudice. Even if trial counsel would not have waived the 3 days the district court would have continued the trial at least 10 days, so that notice still would have been proper and the testimony admissible. Additionally, the victim testified at trial and was subject to cross examination. R.T., October 12, 2013, pgs. 185-224. Therefore, the notice was not required under NRS 51.385 and the testimony would have been admitted regardless of notice. Defendant's allegations on this claim are insufficient to support a finding of prejudice for the second *Strickland* prong which requires Defendant to show a reasonable probability that, but for counsel's errors, the result would have been different.

Findings of Fact, Conclusions of Law and Order, Exhibit 8, pp. 6-8 (ECF No. 22-6, pp. 7-9); *see* Transcript of Trial, October 4, 2010, Exhibit 2A (ECF No. 20-2, pp. 2-11). Branagan then asserted the claim on the appeal in the state habeas action, and the Nevada Supreme Court ruled as follows:

… Branagan contends that trial counsel was ineffective for waiving 3 days of the 10-day notice requirement under NRS 51.385(3) after the district court continued the trial 7 days to provide adequate notice at the request of the State. NRS 51.385(3) provides that when the State seeks the admission of a statement by a child describing sexual conduct or physical abuse, and "the child is unavailable or unable to testify, written notice must be given to the defendant at least 10 days before the trial of the prosecution's intention to offer the statement in evidence." Branagan fails to demonstrate that trial counsel's performance was deficient or prejudice. The district court found that any failure to waive the additional three days "would have been a futile act on trial counsel's part" because "the court would have continued the trial anyway to accommodate the proper notice." The district court also found that notice under NRS 51.385(3) was not required because the victim testified and was subject to cross-examination. *See* NRS 51.385(1)(b). We conclude that the district court did not err by denying this claim.

Order of Affirmance, Exhibit 12, p. 2 (ECF No. 22-10, p. 3).

Branagan's ineffective assistance of counsel claim fails. Branagan's trial counsel did not perform unreasonably. The state courts' ruling that, under the circumstances in this case, notice was not required under NRS § 51.385(3) is a matter of Nevada law, beyond the purview of this federal habeas court. *See Estelle v. McGuire*, 502 U.S. 62, 67-

7

68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."). It is plain, therefore, that, because the notice was not necessary, the waiver of three days of the ten-day notice was of no moment. Branagan's trial counsel did not err, and Branagan was not prejudiced.

The Court finds that the state courts' ruling that Branagan's federal constitutional right to effective assistance of counsel was not violated was not contrary to, or an unreasonable application of *Strickland*, or any other clearly established federal law as determined by United States Supreme Court. The Court will deny habeas corpus relief on Ground 1.

Grounds 2A, 2B, 3A, 3B and 3C

In Ground 2A, Branagan claims that he received ineffective assistance of trial counsel, in violation of his federal constitutional rights, because his trial counsel failed to investigate and pursue "a possible defense relating to his 'diminished capacity' as a result of his ADA recognized disabilities and or pharmacological regime (involuntary intoxication)." *See* Petition for Writ of Habeas Corpus (ECF No. 15), p. 5. In Ground 2B, Branagan claims that his rights under the federal constitution were denied because "Nevada's failure to recognize this affirmative defense of 'diminished capacity' is a denial of the Appellant's [substantive] and procedural due process rights by denying [meaningful] access to the courts; to wit being able to present his disability in the judicial process en toto as provided under the [ADA]." *See id.* In Ground 3A, Branagan claims that his rights under the federal constitution were denied because he was denied his right to present evidence concerning his disability. *See id.* at 7. In Ground 3B, Branagan claims that he received ineffective assistance of trial counsel, in violation of his federal constitutional rights, because his trial counsel failed "to determine that [he] was suffering from a disability." *See id.* And, in Ground 3C, Branagan claims that he received ineffective assistance of trial counsel, in violation of his federal constitutional rights, because his trial counsel failed "to recognize that the ADA allowed [him] to delve into the details regarding

8

[his] mental illness and the side effects that the medications had on his state of mind, for the purpose of furthering an argument regarding involuntary intoxication." *See id.* at 8.

Branagan asserted these claims in his state habeas action. The state district court denied these claims; the ruling included the following:

> Defendant … fails to allege what the desired investigation would have revealed, let alone do so with any specificity. Defendant also fails to allege how the desired investigation would have changed the outcome of the case. Defendant merely asserts that he was taking prescription medication and that trial counsel should have investigated the combined effects.
>
> \* \* \*
>
> Defendant does not specify what evidence should have been investigated or how the evidence would have altered the outcome of the case but rather makes an unsupported conclusory statement which is insufficient to support his claim.
>
> Further, Defendant's claims are belied by the record because a review of Defendant's interview in the trial transcript reveals that Defendant was coherent and competent.
>
> \* \* \*
>
> Defendant's claims are belied by the record. As set forth above, trial counsel did raise the effects of this meditation and alleged mental health conditions as they pertained to Defendant's statement/confession for the jury's consideration. Trial counsel did so through both the cross-examination of the detective and the direct-examination of Defendant. Thus, trial counsel did investigate and raise this claim making Defendant's claim belied by the record.
>
> \* \* \*
>
> To the extent that Defendant argues the jury should have heard his claims of diminished capacity, mental illness, or medication, the record shows that the jury was told this information by Defendant in his own words during his testimony. R.T., October 14, 2010, pgs. 19, 23-24, 32, 37. The statements occurred mostly on direct examination, thus showing that trial counsel utilized Defendant's claims of mental illness and the alleged effects of his medication in his defense. Therefore, this claim and/or sub-claim is belied by the record and not entitled to relief.

Findings of Fact, Conclusions of Law and Order, Exhibit 8, pp. 9-11 (ECF No. 22-6, pp. 10-12).

Branagan then raised these issues on the appeal in his state habeas action, and the Nevada Supreme Court ruled as follows:

> … Branagan contends that trial counsel was ineffective for failing to investigate medical issues relating to potential defenses. Branagan claims that such an investigation would have shown that his rights were violated under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12132 (1990), by Nevada's failure to recognize diminished capacity as a defense because, under the ADA, a defendant must "be allowed to present evidence of their disability *in any proceeding*." Branagan notes that "[i]t is quite possible that [he] was involuntarily intoxicated." In a related argument, Branagan contends that trial counsel was ineffective for failing to apply and enforce the ADA in order to present a diminished capacity/involuntary intoxication defense. [Footnote: Although the supplemental habeas petition filed by Branagan discussed the ADA and Nevada's failure to recognize a diminished capacity defense, it was not specifically alleged that trial counsel was ineffective for failing to apply and enforce the ADA in order to present such a defense.] Branagan fails to demonstrate that trial counsel's performance was deficient or prejudice. Although "the technical defense of diminished capacity is not available in Nevada," *Crawford v. State*, 121 Nev. 744, 757, 121 P.3d 582, 591 (1005), Branagan was not prohibited from presenting evidence regarding his mental health and use of medications. The district court noted that the jury did, in fact, hear about Branagan's mental health and use of various medications through his own testimony on direct examination. Therefore, Branagan did not demonstrate that the failure to recognize the defense of diminished capacity prevented him from presenting evidence of his disability. Further, the district court found that Branagan failed to specify "what the desired investigation would have revealed" or demonstrated that "but for counsel's errors, the result would have been different." We agree and conclude that the district court did not err by denying this claim.

Order of Affirmance, Exhibit 12, pp. 2-3 (ECF No. 22-10, pp. 3-4).

The state court ruling on these claims was not objectively unreasonable. Branagan was not prevented from presenting evidence regarding his mental health and his medication, and he actually did present such evidence. *See*, *e.g.*, Transcript of Trial, October 14, 2010, Exhibit 2C, pp. 19, 23-24 (ECF No. 21-2, pp. 20, 24-25).

Furthermore, Branagan's position now – that mental illness or medication may have affected his actions – would not have strengthened the defense he presented at trial. Branagan testified at trial. *See* Transcript of Trial, October 14, 2010, Exhibit 2C, pp. 7-49 (ECF No. 21-2, pp. 8-50). Branagan claimed, essentially, that his girlfriend's five-year-old granddaughter sexually assaulted him, rather than the other way around. Branagan testified that he was sitting on his bed in his bedroom, dressing after taking a shower, with a shirt over his head, when the little girl unexpectedly entered the room, put

1 his penis in her mouth, and then ran away. *See id.* at 15-18 (ECF No. 21-2, pp. 16-19). Branagan's testimony was as follows:

> Q. What happened, if anything, next?
>
> A. As I said, I was putting the T-shirt on and all of a sudden, I feel something between my legs. And now – like I said, now I'm thinking it was Mary because it's happened before. Excuse for the ladies. But – so I'm thinking it was Mary. But when I got it over, I went, what the hell are you doing? And she just looked at me and bolted out the door. I was more stunned because I, I was like –
>
> Q. Well, what did you either feel or observe happen?
>
> A. She was, excuse the ladies, how do you put it? I mean –
>
> Q. However you would –
>
> A. She had her, she had her mouth on my penis. I don't know how to put that.
>
> Q. And how – what were you thinking when you noticed that? Or what was your reaction to that?
>
> A. What the hell are you doing. And she just looked at me and ran out. And, like I said, her mother was on her way to pick her up. I thought she had already left.

*Id.* at 17-18 (ECF No. 21-2, pp. 18-19); *see also id.* at 30-31, 33 (ECF No. 21-2, pp. 31-32, 34) (describing the incident in a similar manner on cross-examination). Given Branagan's position at trial, and his testimony, it is inconceivable that further evidence regarding his mental health or medication would have had any impact on the jury's view of the case.

There is no showing that Branagan's counsel erred in not further investigating Branagan's mental health or his medication, or in not presenting further evidence regarding those matters to the jury. Branagan has never specified what any further investigation would have revealed, what different evidence should have been presented to the jury, or how it could possibly have made a difference, given his testimony about what happened with the little girl.

Moreover, Branagan cites no Supreme Court precedent – and the Court knows of none – supporting his claim that his federal constitutional rights were violated because

11

Nevada does not recognize the diminished capacity defense. *See Clark v. Arizona*, 548 U.S. 735, 756-79 (2006) (rejecting due process challenge based on Arizona's non-recognition of diminished capacity defense).

The state courts' ruling on these claims was not contrary to, or an unreasonable application of *Strickland*, or any other clearly established federal law as determined by United States Supreme Court. The Court will deny habeas corpus relief on Grounds 2A, 2B, 3A, 3B and 3C.

Ground 4

In Ground 4, Branagan claims that he received ineffective assistance of trial counsel, in violation of his federal constitutional rights, "during [his trial counsel's] cross-examination of the State's witnesses." *See* Petition for Writ of Habeas Corpus (ECF No. 15), p. 10. Branagan points, specifically, at his trial counsel's cross-examinations of the victim and her mother. *See* Reply (ECF No. 29), pp. 6-7.

Branagan asserted this claim in his state habeas petition, and the state district court ruled as follows:

> The fact that Defendant is not happy with the results of trial counsel's examination does not mean that counsel was ineffective. Defendant's claims are belied by the record because trial counsel did in fact cross-examine the witnesses at the trial using the preliminary hearing transcript. *See* R.T., October 12, 2010, pgs. 214-222; R.T., October 13, 2010, pgs. 82-93. Trial counsel impeached both the victim and her mother, Victoria, using their previous statements, their previous descriptions of the incident, how the victim had previously described the testimony, and other topics. *Id*. Further, trial counsel also asked about previous testimony in front of a "lady judge;" while he did not call it the preliminary hearing, he did ask about the testimony in a manner the witness would understand. *Id*. Trial counsel challenged the victim with her previous recantation and, although he had to rephrase his questioning due to an objection, he was successful in getting Victoria to admit that her previous testimony/statements about the way her daughter described the incident were in fact her words as a protective mother rather than a word-for-word description of what her daughter said. *Id*. Further, the district court even noted that trial counsel had impeached the victim and that the jury had the information regarding her prior testimony before them because the court had allowed it in as a recorded recollection due to the victim's young age. R.T., October 13, 2010, pg. 108. Thus, Defendant's claims that trial counsel did not cross-examine the witnesses effectively are belied by the record; further his claim that trial counsel failed to investigate and/or review the preliminary hearing transcript for impeachment material is also belied by the record.

12

> Defendant's citations to *United States v. Cronic*, 466 U.S. 648 (1994), *Bell v. Cone*, 122 S.Ct. 1843 (2002), *Gersten v. Senknowski*, 426 F.3d 588 (2nd Cir. 2005), and *Casey v. Frank*, 246 F.Supp.2d 1000 (E.D.Wis. 2004) are inapplicable because the record shows that counsel did investigate and did provide a meaningful cross-examination using the strategy that counsel deemed appropriate based on his knowledge, experience, and investigation of the case. Thus, trial counsel's action was a well-reasoned strategic decision which is presumed to be and was effective assistance of counsel.

Findings of Fact, Conclusions of Law and Order, Exhibit 8, pp. 12-13 (ECF No. 22-6, pp. 13-14). And, on appeal, the Nevada Supreme Court affirmed this ruling, explaining:

> … Branagan contends that trial counsel was ineffective for failing to investigate and use the preliminary hearing transcript to impeach the child-victim and her mother on cross-examination. Branagan argues that their trial testimony was inconsistent and differed greatly from their testimony at the preliminary hearing. Branagan fails to demonstrate that trial counsel's performance was deficient or prejudice. The district court found that Branagan's claims were belied by the record because "trial counsel did in fact cross-examine the witnesses at the trial using the preliminary hearing transcript." The district court noted that counsel impeached both the victim and her mother "using their previous statements, their previous descriptions of the incident, how the victim had previously described the testimony, and other topics." The district court determined that counsel provided "a meaningful cross-examination" of the two witnesses indicating "a well-reasoned strategic decision." *See generally Rhyne v. State*, 118 Nev. 1, 8, 38 P.3d 163, 167-68 (2002) (explaining that trial tactics are within counsel's control). The district court also determined that Branagan's allegations of prejudice amounted to "unsupported conclusory statements." We agree and conclude that the district court did not err by denying this claim.

Order of Affirmance, Exhibit 12, pp. 3-4 (ECF No. 22-10, pp. 4-5).

The state courts' ruling on this claim was not objectively unreasonable. The record reflects that Branagan's trial counsel's cross-examination of the victim (*see* Transcript of Trial, October 12, 2010, Exhibit 2A, pp. 214-24 (ECF No. 20-2, pp. 225-35)) and her mother (*see* Transcript of Trial, October 13, 2010, Exhibit 2B, pp. 82-92 (ECF No. 21-1, pp. 83-93); *see also* Transcript of Trial, October 13, 2010, Exhibit 2B, pp. 31-32 (ECF No. 21-1, pp. 32-33) (cross-examination of victim's mother in NRS § 51.385 hearing)) were reasonably effective; Branagan has not shown his trial counsel's performance to have been unreasonable, and he has not shown prejudice.

13

The state courts' ruling on this claim was not contrary to, or an unreasonable application of *Strickland*, or any other clearly established federal law as determined by United States Supreme Court. The Court will deny habeas corpus relief on Ground 4.

Ground 5

In Ground 5, Branagan claims that he received ineffective assistance of trial counsel, in violation of his federal constitutional rights, because his trial counsel "failed to object to the testimony of victim's mother, whose testimony was based upon 3rd or 4th party hearsay and admitted to be perjured." *See* Petition for Writ of Habeas Corpus (ECF No. 15), p. 12.

The state district court rejected this claim, as follows, in Branagan's state habeas action:

> As for Defendant's allegations that trial counsel should have, or could have, objected on hearsay grounds, these claims are barred by the law of the case doctrine. Defendant's relief is barred by the law of the case doctrine because the Nevada Supreme Court has already considered his claims and denied the relief sought herein. On appeal Defendant contended that Victoria's statements were improperly admitted. The Nevada Supreme Court found that the statements were properly admitted under hearsay exceptions in NRS 51.385.
>
> \* \* \*
>
> These claims are also belied by the record and seek futile action; thus trial counsel cannot be ineffective. Specifically, the district court held the proper NRS 51.385 hearing prior to admitting the testimony. R.T., October 13, 2010, pgs. 1-56. The district court found the testimony admissible under NRS 51.385. As such, any hearsay objection would have been futile. Therefore, Defendant cannot show that his counsel was ineffective for obtaining a NRS 52.385 hearing and not making futile objections.
>
> Similarly, Defendant cannot show prejudice under *Strickland*'s second prong because he cannot show that had trial counsel attempted the allegedly necessary objections the outcome would have been any different.

Findings of Fact, Conclusions of Law and Order, Exhibit 8, p. 15 (ECF No. 22-6, p. 16); *see also* Transcript of Trial, October 13, 2010, Exhibit 2B, pp. 2-55 (ECF No. 21-1, pp. 3-56) (NRS § 51.285 hearing). The Nevada Supreme Court affirmed this ruling, stating:

> … Branagan contends that trial counsel was ineffective for failing to raise a hearsay objection to the testimony of the victim's mother regarding the victim's out-of-court statements. Branagan claims that counsel did not

14

object to the testimony "because he clearly never read the case file or investigated the case." Branagan fails to demonstrate that trial counsel's performance was deficient or prejudice. The district court determined that an objection on hearsay grounds would have been futile because, after the trustworthiness hearing conducted outside the presence of the jury, the mother's testimony was deemed admissible pursuant to NRS 51.385. *See Ennis v. State*, 122 Nev. 694, 706, 137 P.3d 1095, 1103 (2006) (stating that counsel cannot be deemed ineffective for failing to make futile objections). The district court also determined that Branagan failed to demonstrate that the outcome of the trial would have been different had counsel objected. Finally, in rejecting this claim, the district court noted that in Branagan's direct appeal, we found that the district court did not abuse its discretion by admitting the challenged testimony. *See Branagan v. State*, Docket No. 57523 (Order of Affirmance, November 18, 2011). We agree and conclude that the district court did not err by denying this claim.

Order of Affirmance, Exhibit 12, pp. 4-5 (ECF No. 22-10, pp. 5-6).

In light of the state courts' ruling that the victim's mother's testimony was admissible under Nevada evidence law, it is clear that the objection envisioned by Branagan would have been futile. The Nevada courts' ruling on the admissibility of the testimony was a matter of state law, and is not subject to review in this federal habeas action. *See Estelle*, 502 U.S. at 67-68. Branagan has not shown that his counsel performed unreasonably, or that he was prejudiced. The Nevada courts' ruling was not objectively unreasonable. The Court will deny relief on Ground 5.

Branagan's Motion for Appointment of Counsel

On June 14, 2018, Branagan filed a second motion for appointment of counsel (ECF No. 36). "Indigent state prisoners applying for habeas corpus relief are not entitled to appointed counsel unless the circumstances of a particular case indicate that appointed counsel is necessary to prevent due process violations." *Chaney v. Lewis*, 801 F.2d 1191, 1196 (9th Cir. 1986) (citing *Kreiling v. Field*, 431 F.2d 638, 640 (9th Cir. 1970) (per curiam). The court may, however, appoint counsel at any stage of the proceedings "if the interests of justice so require." *See* 18 U.S.C. § 3006A; *see also* Rule 8(c), Rules Governing § 2254 Cases; *Chaney*, 801 F.2d at 1196.

Branagan previously requested appointment of counsel, on January 10, 2017 (ECF No. 27). That motion was denied on January 13, 2017 (ECF No. 28). It remains the Court's view that appointment of counsel is not warranted.

Certificate of Appealability

The standard for issuance of a certificate of appealability calls for a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c). The Supreme Court has interpreted 28 U.S.C. § 2253(c) as follows:

> Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.

*Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also James v. Giles*, 221 F.3d 1074, 1077-79 (9th Cir. 2000). The Supreme Court further illuminated the standard in *Miller-El v. Cockrell*, 537 U.S. 322 (2003). The Court stated in that case:

> We do not require petitioner to prove, before the issuance of a COA, that some jurists would grant the petition for habeas corpus. Indeed, a claim can be debatable even though every jurist of reason might agree, after the COA has been granted and the case has received full consideration, that petitioner will not prevail. As we stated in *Slack*, "[w]here a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."

*Miller-El*, 537 U.S. at 338 (quoting *Slack*, 529 U.S. at 484).

The Court has considered all of Branagan's claims with respect to whether they satisfy the standard for issuance of a certificate of appeal, and determines that none of them do. The Court will deny Branagan a certificate of appealability.

///
///
///
///
///
///
///
///
///

**IT IS THEREFORE ORDERED** that petitioner's motion for appointment of counsel (ECF No. 36) is **DENIED**.

**IT IS FURTHER ORDERED** that the Petition for Writ of Habeas Corpus in this case (ECF No. 15) is **DENIED**.

**IT IS FURTHER ORDERED** that the petitioner is denied a certificate of appealability.

**IT IS FURTHER ORDERED** that the Clerk of the Court shall **ENTER JUDGMENT ACCORDINGLY**.

DATED THIS 7 day of August, 2018.

_____
GLORIA M. NAVARRO,
CHIEF UNITED STATES DISTRICT JUDGE